UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x

HENRY PLATSKY,                        :

                   Plaintiff,   :

       -against-                     :

CHAIM LAZAR, Manager,                 :
The Orenstein Building,

                       :

           Defendant.[1]

------------------------------------------------x

**REPORT AND
RECOMMENDATION
TO THE HONORABLE
PAUL A. CROTTY**

15cv2454-PAC-FM

| USDC SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: 11/30/15 |

**FRANK MAAS,** United States Magistrate Judge.

I.    Introduction

       Pro se plaintiff Henry Platsky ("Platsky") brings this action against Chaim

Lazar ("Lazar"), manager of the United Jewish Council (UJC) Bialystoker Synagogue

Houses ("UJC Building"), for alleged violations of section 202 of the Housing Act of

1959, 12 U.S.C. § 1701q, ("Section 202"). (ECF No. 2 ("Complaint" or "Compl.")).

Lazar has now moved to dismiss Platsky's Complaint pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure. (ECF No. 27). For the reasons set forth below, that

motion should be granted.

---

[1]    Platsky originally also named five government officials as defendants. By Order
dated May 12, 2015, Your Honor dismissed the claims against those defendants on several
grounds, including sovereign immunity. (See ECF No. 5 at 2-3). Accordingly, I have amended
the caption of this case to reflect the fact that Lazar is the sole remaining defendant.

II.     Relevant Factual and Procedural History

Unless otherwise noted, the following facts are either undisputed or set forth in the light most favorable to Platsky.

Section 202 is a federal program that helps increase the availability of supportive housing for elderly persons though capital advances and rent subsidies. 12 U.S.C. §§ 1701q(a), (c).  Pursuant to regulations promulgated by the United States Department of Housing and Urban Development ("HUD"), housing covered by Section 202 ("Section 202 Housing") is available solely to very low-income elderly persons. 24 C.F.R. § 891.410(c)(1).

During the spring of 2011, Platsky placed his name on a waiting list for Section 202 Housing at the UJC Building.  (Compl. at 2).  Platsky went back to the UJC Building in the fall of 2013 because he had not received any information regarding his status on the waiting list.  (Id. at 3).  An employee in the administrative office informed Platsky that the UJC Building was currently accepting applications for tenants.  (Id.). Although Platsky was surprised to learn that the building was accepting applications because he had been on the waiting list for some time, he submitted an application without protesting the failure to call him in the meantime.  (Id.).  When he telephoned several days later to check on the status of his application, he was told that it had not been accepted and that applicants were selected on a "first come first served" basis.  (Id.).

Based on this sequence of events and a similar statement subsequently made by Lazar, Platsky concluded that the UJC Building had "voided" the waiting list.

2

(Id.).  Platsky contends that this action violated the HUD regulations – specifically,

24 C.F.R. § 891.410(a).  (Id. at 2).  That regulation requires the owner of Section 202

Housing to "adopt written tenant selection procedures . . . [and] maintain a written,

chronological waiting list . . . of each person applying for the program."  24 C.F.R.

§ 891.410(a).

        Over the ensuing months, Platsky complained to HUD officials about the

selection procedures at the UJC Building.  (Compl. at 3-4).  When those efforts proved

unsuccessful, Platsky commenced this action on or about March 3, 2015.  (Id. at 1, 4).

        On September 1, 2015, Lazar moved to dismiss Platsky's Complaint

pursuant to Rule 12(b)(6).  (ECF No. 27).  On October 8, 2015, Platsky filed his papers in

opposition to Lazar's motion.  (ECF No. 40 ("Opp. Mem.")).  On October 15, 2015,

Lazar filed his reply.  (ECF No. 41).  The motion consequently is fully submitted.

III.   Standard of Review

        A Rule 12(b)(6) motion to dismiss for failure to state a claim "tests the legal

sufficiency of [a] plaintiff's claim for relief."  Krasner v. HSH Nordbank AG, 680 F.

Supp. 2d 502, 511 (S.D.N.Y. 2010).  In deciding the motion, the Court must accept as

true all factual allegations made in the complaint and draw all reasonable inferences in

favor of the plaintiff.  Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  To

survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

556 U.S. 662, 663 (2009) (quoting Twombly v. Bell Atlantic Corp., 550 U.S. 544, 570 (2007)).

The Court must read pro se pleadings "liberally" and interpret them "to raise the strongest arguments" that they may suggest.  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (quoting Harris v. City of N.Y., 607 F.3d 18, 24 (2d Cir. 2010)). "Dismissal of a pro se complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." Carvel v. Ross, No. 09 Civ. 722 (LAK) (JCF), 2011 WL 856283, at *8 (S.D.N.Y. Feb. 16, 2011).

IV.   Discussion

Lazar contends that the Complaint must be dismissed because Platsky cannot maintain a private right of action to enforce 24 C.F.R. § 891.410(a).  (ECF No. 30 ("Def.'s Mem.") at 4-12).  In other words, Lazar maintains that Platsky cannot enforce the HUD regulation even if he can demonstrate that it has been violated and that he has been harmed.  (See Def.'s Mem. at 6 (citing Cannon v. Univ. of Chicago, 441 U.S. 677, 688 (1979) ("[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.")).  For the reasons set forth below, that reading of the applicable statutory and regulatory scheme is correct.  Accordingly, Lazar is entitled to dismissal of the Complaint pursuant to Rule

12(b)(6).[2]  See Fair v. Verizon Commc'ns, Inc., No. 14-2194, 2015 WL 6444679, at *1

(2d Cir. Oct. 26, 2015).

      A.     Legal Standard

      "[P]rivate rights of action to enforce federal law must be created by

Congress."  Alexander v. Sandoval, 532 U.S. 275, 286 (2001).  A federal statute may

create such a right of action either expressly or by implication.  Republic of Iraq v. ABB

AG, 768 F.3d 145, 170 (2d Cir. 2014), cert. denied, 135 S. Ct. 2836 (2015).  When

Congress has not explicitly provided a private right of action, however, "the presumption

[is] that Congress did not intend one."  Bellikoff v. Eaton Vance Corp., 481 F.3d 110, 116

(2d Cir. 2007).  Indeed, the "Supreme Court has come to view the implication of private

remedies in regulatory statutes with increasing disfavor."  Hallwood Realty Partners, L.P.

v. Gotham Partners, L.P., 286 F.3d 613, 618 (2d Cir. 2002).

      "Congressional intent is the keystone as to whether a federal private right of

action exists for a federal statute."  Bellikoff, 481 F.3d at 116 (citing Sandoval, 532 U.S.

275, 286-87 (2001)).  "To discern Congress's intent," a court must "look first to the text

and structure of the statute."  Republic of Iraq, 768 F.3d at 170 (quoting Lindsay v. Ass'n

of Prof'l Flight Attendants, 581 F.3d 47, 52 (2d Cir. 2009)) (internal quotation marks

omitted); see also Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11,

---

[2]      This result is not altered by the fact that Platsky has brought this suit against a private individual rather than a public agency, as Platsky argues.  (Opp. Mem. at 2).  Simply put, when no private right of action exists, a plaintiff cannot enforce a statutory scheme against any party.

15 (1979) ("The question whether a statute creates a cause of action, either expressly or

by implication, is basically a matter of statutory construction.").

A court's analysis of Congressional intent also may be "illuminate[d]" by

the four-factor test established by the Supreme Court in Cort v. Ash, 422 U.S. 66, 78

(1975).  See Lindsay, 581 F.3d at 53 n.3.  Those four factors are whether:

> (1) . . . the "plaintiff is one of the class for whose especial
> benefit the statute was enacted;" (2) . . . there is "any
> indication of legislative intent, explicit or implicit, either to
> create such a remedy or deny one;" (3) . . . private
> enforcement is "consistent with the underlying purposes of
> the legislative scheme;" and (4) . . . the cause of action is "one
> traditionally relegated to state law."

Aetna Life Ins. Co., 966 F.2d at 740 (citations omitted) (quoting Cort, 422 U.S. at 78).

Although the Cort factors were once decisive, "the . . . factors (other than

congressional intent) now enter into the analysis only as possible indicia for legislative

intent."  Hallwood, 286 F.3d at 619 n.7; see also Health Maintenance Health Care Plan,

Inc. v. Aetna Life Ins. Co., 966 F.2d 738, 740 (2d Cir. 1992) ("[T]he Supreme Court has

since refocused . . . the test by emphasizing . . . Congressional intent.").

B.    Implied  Private Right of Action

As Lazar correctly observes, (Def.'s Mem. at 4-6), Section 202 does not

explicitly create a private right of action.  The Court therefore must determine whether

Congress impliedly intended to create such a cause of action, looking first to the text and

structure of the statute and being mindful of the presumption against implied private

rights of action.  See Republic of Iraq, 768 F.3d at 170; Bellikoff, 481 F.3d at 116.

Here, that inquiry fails to establish that Congress intended to create a private right of action.

At the outset, the text of the provisions of Section 202 relating to tenant selection focus on the persons being regulated rather than the tenants who are the ultimate beneficiaries of this housing.  Section 202 thus provides that an "<u>owner</u>" must use "written tenant selection procedures . . . satisfactory to the Secretary" that are "consistent with the purpose of [the Act]."  12 U.S.C. § 1701q(i)(1) (emphasis added).  The HUD regulations promulgated thereunder similarly specify that an "<u>owner</u>" must "maintain a written, chronological waiting list . . . for the program."  24 C.F.R. § 891.410 (emphasis added).  This language clearly focuses on the property owners who are being regulated rather than the elderly persons whom Section 202 is intended to help.  This, in turn, strongly suggests that Congress did not intend to create a federal private right of action.  <u>See</u> <u>Sandoval</u>, 532 U.S. at 290 ("Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'") (quoting <u>California v. Sierra Club</u>, 451 U.S. 287, 294 (1981)).

Second, although the mandatory language of the regulation may at first blush appear to create rights, <u>see</u> <u>Wilder Blessing v. Freestone</u>, 520 U.S. 329, 341 (1997) (noting that language that "unambiguously impose[s] a binding obligation" is indicative of a federal right), the critical inquiry is whether the <u>statute</u> giving rise to the regulation uses rights-creating language, <u>see</u> <u>Sandoval</u>, 532 U.S. at 291 ("Language in a regulation

. . . may not create a right that Congress has not.").  Here, the statute merely authorizes

the HUD Secretary to promulgate tenant selection procedures that are consistent with the

purpose of Section 202.  12 U.S.C. § 1701q(i)(1).  Significantly, the statute does not even

mention a chronological waiting list, virtually precluding a finding that Congress intended

that there be a private right of action to enforce this regulatory requirement.  See GFI

Genfare v. Reg'l Transp. Auth., 932 F. Supp. 1049, 1051 (N.D. Ill. 1996) ("This type of

general enabling statute typically does not reflect congressional intent to provide for

private causes of action."); see also Bellikoff, 481 F.3d at 116 ("[T]he absence of 'rights-

creating language' indicates a lack of congressional intent to create private rights of

action.").

    Third, the HUD Secretary's broad statutory authority to carry out his duties

also augurs against implying a private right of action.  Under HUD's general

administrative provisions, the Secretary "may make such rules and regulations as may be

necessary to carry out his . . . duties."  42 U.S.C. § 3535(d).  Pursuant to this authority,

HUD has promulgated regulations to enforce all of Section 202.  Those regulations

require HUD to "conduct periodic on-site management reviews" of Section 202

Housing," and allow HUD to "impose sanctions" and "seek legal or equitable relief" to

ensure compliance.  24 C.F.R. §§ 891.450, 891.865.  The fact that HUD has acted under

this broad statutory authority to create regulations regarding Section 202 (and that those

regulations vest no power in tenants) is again probative of an intent to give HUD

exclusive enforcement authority.  See Sandoval, 532 U.S. at 290 ("The express provision

of one method of enforcing a substantive rule suggests that Congress intended to preclude others.").  Indeed, the Secretary's apparent reading of his statutory authority is consistent with the presumption against implied private rights of action.

Finally, none of the Cort factors suggests that Congress intended to provide a private right of action for tenants.  The first factor, for example, asks the Court to consider whether "the plaintiff [is] one of the class for whose especial benefit the statute was enacted, . . . that is, does the statute create a federal right in favor of the plaintiff?" Cort, 422 U.S. at 78 (citation and internal quotation marks omitted).  Although Platsky presumably is among the class of intended beneficiaries, Section 202's tenant selection procedure, by its terms, does not create any federal rights in favor of members of the class.  This factor consequently does not support implying a right of action.  Turning to the second factor, there similarly does not appear to be any legislative history suggesting that Congress intended to create such a right.  Although judicial implication of such a right might further the cause of elderly prospective tenants, it also might chill the willingness of private developers to participate in the Section 202 Housing program.  Recognizing an implied right of action also would be inconsistent with the delegation of broad authority to the HUD Secretary to carry out his duties.  Accordingly, the third Cort factor similarly suggests that Platsky is not entitled to sue.  Finally, although landlord-tenant disputes are traditionally relegated to state law, the issue in this case does not appear to be addressed by any New York State or City statute or regulation.  There nevertheless remains the presumption that Congress did not intend to create a private

9

right of action to fill this gap.  In light of that presumption, the mere fact that the state courts afford Platsky no remedy is not enough to warrant implying a right of action. Platsky's Complaint should therefore be dismissed for failure to state a claim.

      C.    <u>Leave to Replead</u>

      A "court should not dismiss [a <u>pro</u> <u>se</u> complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000) (quoting <u>Gomez v. USAA Fed. Sav. Bank</u>, 171 F.3d 794, 795 (2d Cir. 1999)).  A court may deny leave to amend, however, when it finds an "apparent" reason to do so, "such as . . . bad faith, . . . undue prejudice to the opposing party . . . [, or] futility of amendment." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>accord</u> <u>Hemphill v. Schott</u>, 141 F.3d 412, 420 (2d Cir. 1998).

      Here, under even the most liberal reading of the Complaint, Platsky cannot state a legally-sufficient claim for relief.  Rather, "the problem with [Platsky's] cause[] of action is substantive; better pleading will not cure it." <u>Cuoco</u>, 222 F.3d at 112.  For that reason, despite the liberal treatment that <u>pro</u> <u>se</u> plaintiffs are customarily afforded, the Complaint in this case should be dismissed without granting Platsky leave to replead.

V.      Conclusion

         For the reasons set forth above, Lazar's motion to dismiss, (ECF No. 27),

should be granted.  Additionally, any other motions presently pending should be denied

as moot.[3]

VI.     Notice of Procedure for Filing Objections to this Report and Recommendation

         The parties shall have fourteen days from the service of this Report and

Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule

72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a) and (d).  Any

such objections shall be filed with the Clerk of the Court, with courtesy copies delivered

to the chambers of the Honorable Paul A. Crotty, to my chambers at the Daniel Patrick

Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007, and

to any opposing parties.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).

Any requests for an extension of time for filing objections must be directed to

JudgeCrotty.  The failure to file timely objections will result in a waiver of those

---

         [3]      On August 11, 2015, Platsky moved to modify my Discovery Order dated August
4, 2015.  (ECF No. 22).  On August 18, 2015, even before Lazar had filed his formal
motion to dismiss, Platsky filed a "Response to Defendant's Motion to Dismiss and [Cross]
Motion for Summary Judgment."  (ECF No. 25).

11

objections for purposes of appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).

       SO ORDERED.

Dated:      New York, New York
           November 30, 2015

                               FRANK MAAS
                      United States Magistrate Judge

Copies to:

Defendant's counsel via ECF

Henry Platsky (via U.S. Mail)
174 Avenue A, Apt. 1D
New York, New York 10009